**James J. RUTHERFORD, Petitioner,**

v.

**Terrell Don HUTTO, Commissioner of Correction, State of Arkansas, and A. L. Lockhart, Superintendent, Cummins Unit, Arkansas Department of Correction, Respondents.**

No. PB–73–C–193.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

June 18, 1974.

James J. Rutherford, pro se.

Jim Guy Tucker, Atty. Gen., and James W. Atkins, Asst. Atty. Gen., State of Arkansas, Little Rock, Ark., for respondents.

MEMORANDUM AND JUDGMENT

HENLEY, Chief Judge.

This is an action brought by James J. Rutherford, an inmate of the Cummins Unit, Arkansas Department of Correction, against Terrell Don Hutto, Arkansas Commissioner of Correction, and A. L. Lockhart, Superintendent of the Cummins Unit. Petitioner seeks equitable relief under 42 U.S.C.A., section 1983, and jurisdiction is conferred upon this Court by 28 U.S.C.A., section 1343(3). Petitioner has been permitted to prosecute the action in forma pauperis; however, the Court has not deemed it necessary to appoint counsel to represent petitioner.

Petitioner complains that his enforced attendance of classes being held at Cummins in connection with the operation of the prison school district created by Arkansas Act 279 of 1973, Ark.Stats., Ann., Cum.Supp., section 46–1301 et seq., violates rights protected by the First Amendment to the Constitution of the United States and also constitutes cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. Respondents deny that the complaint has merit.

An evidentiary hearing was held in open court on May 24, 1974. In the course of the hearing the Court received the testimony of petitioner, Assistant Cummins Superintendent Jerry Campbell, the prison physician, Dr. George W. Smiley, and certain employees of the Department who are engaged in conducting the school. At the conclusion of the hearing petitioner was given leave to submit to the Court within a few days written communications from certain persons in the outside world; it was agreed that those communications would be received in evidence; however, no such communications have been received, and the Court does not think that any useful purpose would be served by waiting further for them. This memorandum incorporates the Court's findings of fact and conclusions of law.

Petitioner is a 43 year old white male. He is properly classified as illiterate although he has some slight ability to read and write and some elementary understanding of simple arithmetic. Petitioner's illiteracy is due entirely to lack of formal education. While he is not highly intelligent, he is probably not mentally retarded. For many years he has pursued a systematic criminal career, and he has a substantial record of felony convictions.

Petitioner alleges and has testified that when he was a small boy he suffered a severe attack of typhoid fever which caused his parents to remove him from the first or second grade in school, and that he never returned to school. He says that the family physician advised his parents that he should never be enrolled in school again, and he testified that his classroom attendance makes him extremely nervous. He is required to attend classes some eight hours a day, one day a week. When he is not in school, his duties are to operate heavy motorized equipment on and about the prison farm. At one time he, and other inmates similarly situated, were required to attend night classes on one night of each week in addition to performing their regular duties as inmates during the day. Compulsory attendance at night classes has now been discontinued, and the complaint that petitioner made originally that he had to work all day and then go to school during what would ordinarily be his leisure time has gone out of the case.

In addition to complaining about being made to go to school, petitioner has complained during the pendency of the case that he has been placed in fear by prison personnel on account of the fact that he filed the suit; and a few days before the hearing he complained that he had been found guilty of a major disciplinary violation on a trumped up charge of damaging a piece of State owned equipment which he was operating. In view of petitioner's early allegations of threatened retaliation the Court issued an order temporarily restraining respondents and their subordinates from forcing petitioner to go to school and from reducing him in class or changing his job assignment adversely unless petitioner should be found guilty of a major disciplinary violation. The order specified that should petitioner be charged with such a violation and found guilty by a prison disciplinary panel, the Court was to be advised of the fact at once and to be furnished with a statement as to the facts and circumstances of the episode.

The Court does not find from a preponderance of the evidence that petitioner has in fact been the subject of retaliation on account of his having filed this suit, and is satisfied that petitioner's recent conviction by the disciplinary panel of willfully or negligently operating a piece of equipment that had no oil in it was not retaliatory and was not related to this litigation in any way. After hearing petitioner's version of what took place, the Court entertains some doubt that petitioner should have been convicted. However, it appears that due to the existence of the Court's restraining order no punishment was imposed on petitioner, and that he is still doing his regular work and still occupies the status of a trusty inmate. The Court will return

to this matter briefly before concluding this memorandum.

Returning now to petitioner's complaint about the school, petitioner asserts that he has a constitutional right to remain ignorant and, indeed, illiterate. He has no interest in learning, and the Court finds that it probably does make petitioner nervous to sit in a classroom all day; in that connection the Court noticed that sitting in the courtroom and testifying during the hearing appeared to be making petitioner somewhat nervous. Petitioner says that although he is illiterate, he understands life and people, and that he possesses sufficient skills to earn an honest living in the free world. The Court finds that petitioner could make such a living as a machinery operator if he wanted to; there is, unfortunately, little reason to believe that petitioner has sufficient motivation to lead a law abiding life to keep him out of trouble after his present sentence expires or after his release on parole, should he be so released.

Over four years ago the Court had occasion to hold that conditions and practices prevailing in the Arkansas Department of Correction were so substandard as to make the confinement of human beings in either of the Department's units for male offenders a cruel and unusual punishment prohibited by the Constitution. Holt v. Sarver, E.D.Ark., 1970, 309 F.Supp. 362. In the course of its discussion the Court pointed out and commented upon the then complete lack of any rehabilitation program at Cummins and recognized the well known contribution to crime of ignorance and lack of skills. While the Court was unwilling to hold that the Constitution positively requires a State to make an effort to rehabilitate its convicts, the Court recognized that a State has a right to do so

and an interest in doing so. 309 F. Supp. at 378–379. And the Court considered that the lack of any meaningful program of rehabilitation at Cummins was a factor to be considered along with others in determining whether confining a person there amounted to cruel and unusual punishment. Ibid.

In its most recent opinion dealing with the Department of Correction, Holt v. Hutto, E.D.Ark., 1973, 363 F.Supp. 194,[1] the Court took note of the many improvements that have been made at Cummins since 1970, and the Court is of the view that not the least of those improvements has been the establishment of the school which petitioner is being required to attend against his will.

Section 1 of Act 279 of 1973 provides that properties owned by the State and occupied by the various units of the Department of Correction shall constitute the Department of Correction School District, and that the State Board of Correction is to act as the District's school board.

Section 2 recites that the District is being created for the purpose of providing elementary, secondary, and vocational technical education to all persons incarcerated in the Department who are not high school graduates, irrespective of age. And the section then goes on to authorize a continuance of the adult education program currently being administered by the England Special School District No. 2 of Lonoke County, Arkansas.[2]

Section 3 of the Act specifies that the school is to be supported by State funds and by federal funds to the extent that federal funds are or may become available. It is stipulated that the District, like more conventional districts throughout the State, is to share in the distribu-

1. An appeal by the inmates from that decision is now pending.

2. The City of England is located near the Tucker Intermediate Reformatory which is the unit of the Department that is used for the confinement and attempted rehabilitation of convicts younger and less hardened than those confined at Cummins. The program being administered by the England District is not involved in this case.

tion of grants and aids from the State Department of Education.[3]

Section 4 of the Act authorizes the Board of Correction and the State Board of Education to make necessary rules and regulations for the implementation of the educational program created by the Act. And section 5 provides that the schools operated by the District and the students attending them shall be entitled to all of the rights and privileges of public schools and public school students generally to the extent that such rights and privileges are not inconsistent with the status of the District's students as convicts.

The record reflects that the school operated by the Department is the equivalent of an ordinary twelve grade school system; both academic and vocational courses are offered. Participation in the school program is voluntary for inmates who have attained a fourth grade educational level. Inmates, like petitioner, who do not possess the equivalent of a fourth grade education are required to attend classes until they complete what amounts to the fourth grade after which they may withdraw from the program if they do not care to participate further.

The students attend school four hours in the morning and four hours in the afternoon one day a week.[4] They have an hour off for lunch and recesses are allowed from time to time during the day. The classes are ungraded, and students are permitted to move along at their own pace; there is no particular pressure put on any student to achieve or to achieve at any particular rate. No sanctions are imposed if a student performs poorly. The Cummins population varies substantially in age, and roughly the same age variations are observable

in the school as are observable in the general prison population. Students are grouped together for purposes of instruction and training on the basis of their comparability to each other in their ability to learn and profit from the program.

The record indicates that petitioner's participation in the program, however unwilling it may have been, has not been wholly barren of results. He reads at the second grade level and has made at least some measurable progress in the field of arithmetic. The Court does not find from the evidence that petitioner's attack of typhoid fever many years ago left residua which would cause school attendance to be injurious to his physical, mental, or emotional well being, and the Court does not consider that the nervousness that petitioner experiences while in class is so serious as to raise any question as to whether it is cruel and unusual punishment to make him sit in class one day a week rather than drive a tractor on that day. He is no longer required to attend night classes after a full day's work, so from that standpoint it cannot be said that the school attendance requirement renders petitioner's confinement unreasonably arduous or discriminates between him and other field workers who happen to have had more formal education than petitioner has received. Petitioner simply does not want to go to school; he prefers operating farm machinery to sitting in class and being exposed to an elementary education that he does not care to receive.

What has been said to this point brings the Court to the constitutional question before it. The question is not whether compulsory school attendance on the part of illiterate adult inmates of penal institutions will invariably or even

---

3. The amount of State aid that a public school district receives in Arkansas depends in part upon the number of students in "average daily attendance." And in one of his pleadings petitioner asserts that he is being made to go to school simply because the Department profits financially from his attendance. The Court is sure that petitioner is counted among the students in calculat-

ing the number in average daily attendance, but the Court does not find that the motive of respondents in making petitioner go to school is to get the small amount of State or federal aid attributable to his attendance.

4. Following the afternoon session there is an hour devoted to physical education.

usually rehabilitate them effectively so that they will lead law abiding lives upon their return to the outside world. It should always be kept in mind in this connection what former Correction Commissioner C. Robert Sarver once said, namely that prison education may do no more than convert illiterate convicts into literate ones who may by virtue of their literacy become more sophisticated criminals upon their release from confinement. The question is not whether any really useful purpose is served by forcing this petitioner, as an individual, to go to school; he, of course, cannot be forced to learn and no effort is being made to force him to do so.

The question, then, is whether in the interest of rehabilitation of convicts a State may constitutionally require adult inmates of a prison to attend classes where they are given an opportunity to learn something which they may or may not be willing or able to turn to their profit. To put it this way, may the State constitutionally lead the horse to water even though it knows that the horse cannot be made to drink?

■ While it may be doubted that rehabilitation programs in prisons are as effective as we would like for them to be, a State clearly has a right to undertake to rehabilitate its convicts; and indeed most convict complaints in this area are the direct opposite of the complaint made here; most convict complaints involving rehabilitation are either that there are no adequate programs or that the complaining convict is wrongfully denied an opportunity to participate in existing programs.

Granting the right of a State to try to rehabilitate the inmates of its penal institutions, the Court does not think that it should necessarily be left up to an individual convict to determine whether or not he is to participate in a rehabilita-

tive program such as the one involved here. To put it another way, if a State can compel a convict to perform uncompensated labor for the benefit of the State, as can constitutionally be done, Holt v. Sarver, supra, 309 F.Supp. at 369–372, a fortiori a State has the constitutional power to require a convict to participate in a rehabilitation program designed to benefit the convict.

There are, of course, constitutional limits to what a State may do in the name or cause or rehabilitation. The Court does not think that a State may subject a convict to a rehabilitative program or procedure that is dangerous to his life or health, or that makes his overall confinement unduly harsh or rigorous, or that invidiously discriminates against him on an impermissible ground such as religion or race, or that invades federally protected rights that follow the inmate into the institution.[5] But, aside from those limitations and perhaps others that do not immediately come to mind, the Court does not consider that a convict has any more right to refuse to be given a chance to benefit from a rehabilitative program than he has to refuse to work or to obey other lawful orders that may be given him by prison personnel.

■ The "constitutional right to be ignorant" or "the constitutional right to remain uneducated," which petitioner postulates, simply does not exist. On the other hand, the Court holds that a State has a sufficient interest in eliminating illiteracy among its convicts to justify it in requiring illiterate convicts, including adults, to attend classes designed to bring them up to at least the fourth grade educational level where their exposure to instruction does not affect them adversely in any significant way and where they are not punished simply because they cannot or will not learn. If

5. When we speak of rehabilitation of convicts, we generally think of programs designed to educate them and to provide them with usable skills. However, rehabilitation may take a number of forms; it may involve medical, surgical or dental treatment or psy-chotherapy. Restrictions may also be placed on convict activities in the name of rehabilitation. Such restrictions may or may not be permissible constitutionally. See e. g. Procunier v. Martinez, 1974, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224.

an illiterate convict can learn to read and write while in prison, that achievement may motivate him to improve himself further, or the achievement itself may give him a degree of self confidence that he needs to live in the outside world as a law abiding, productive citizen.

From what has been said it follows that the petition must be dismissed. That means that petitioner can and probably will be required to attend classes again, and if he refuses to do so, he may be subjected to reasonable prison discipline. It goes without saying, of course, that respondents and their subordinates may not retaliate against petitioner for having prosecuted this action; if they do, they will be in contempt of the Court's decrees in the Holt litigation that has been mentioned.

As to the disciplinary conviction which petitioner has recently sustained, it has been pointed out that no punishment was imposed on petitioner because apparently the members of the disciplinary panel construed the Court's temporary order in this case as prohibiting petitioner's being punished for serious infractions of prison rules. The order was not so intended; its purpose was simply to protect petitioner *pendente lite* from unlawful retaliation and from unjust or unfounded accusations. Upon the dismissal of the petition the prison authorities may be in a position to reopen the disciplinary proceeding in question and impose perhaps serious punishment on petitioner. Apart from any question of the right of prison personnel to take that course of action, the Court thinks that it might be unwise for them to do so, particularly if they actually want petitioner to cooperate in and profit from the school program.

What has just been said leads the Court to advise petitioner to reconsider his attitude about the school program and to realize that it is designed to benefit him, and that it can benefit him if he will let it; certainly, it will not hurt him to have at least some more education than he has.

If the petitioner desires to appeal from the judgment of the Court, he should advise the Clerk of this Court or the Court itself in writing that he wishes to appeal; that advice must be given within 30 days from this date. The question presented is an unusual and interesting one, and if petitioner wants to appeal the Court will not prevent him from appealing in forma pauperis; however, if petitioner appeals and desires to have appellate counsel appointed, he should make his request for counsel to the Clerk of the Court of Appeals at St. Louis, Missouri. If an appeal is taken, petitioner will be entitled to a free transcript of the proceedings in the case unless the Court of Appeals directs otherwise.

Accordingly, it is by the Court, considered, ordered, and adjudged that the temporary injunction or restraining order heretofore issued by this Court in this cause be, and the same hereby is, Dissolved, and that the petition herein be, and the same hereby is, Dismissed with prejudice.

Dated this 18th day of June, 1974.