928 F.2d 407
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Louie AIELLO and Larry George, Plaintiffs/Appellants,
v.
Jerry ARONSON, Karen Radtke, Captain Brunious and Bruce
Schneider, Defendants/Appellees.
 Nos. 90-1319, 90-1535.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 22, 1991.*
Decided March 14, 1991.
 
 Appeal from the United States District Court for the Western District of Wisconsin, No. 89 C 204, Barbara B. Crabb, Chief Judge.
 W.D.Wis.
 AFFIRMED.
 Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Plaintiffs, former state prisoners at the Columbia Correctional Institution ("CCI"), brought a 42 U.S.C. Sec. 1983 action seeking money damages from several CCI correctional officers for allegedly violating their constitutional rights when the defendants strip searched them three times in one hour. We affirm the district court's grant of summary judgment in favor of the defendants on plaintiffs' unreasonable search claim and its order denying plaintiffs leave to proceed in forma pauperis on their privacy claim.
 
 I. FACTS
 
 2
 CCI security staff found clay molds capable of duplicating handcuff keys in the CCI weatherization shop. A CCI security supervisor and defendant Brunious decided that the discovery of the clay molds necessitated a strip search of the five inmates who worked in the weatherization shop. Aronson was instructed to conduct a strip search of the plaintiffs. However, Brunious did not communicate to Aronson the objects of the strip search--clay molds or a key created from the molds.
 
 
 3
 The first and second search took place in a shower stall. After Aronson searched the plaintiffs for the first time, Radtke informed him that Brunious found a handcuff key sewn into the pants of one of the other searched inmates. She asked Aronson whether he had searched for anything that small. Aronson stated that he had not, thus the defendants decided to conduct a second search. The second search did not reveal a key. Plaintiffs allege that while they were strip searched in the shower they were visible to other inmates.
 
 
 4
 After the two shower strip searches, plaintiffs were placed in temporary lockup pending further investigation of the missing key molds. Defendant Schneider escorted the plaintiffs to the disciplinary segregation (DS-2) unit. Schneider knew about the two previous strip searches of the plaintiffs. Before entering the DS-2 unit plaintiffs were strip searched a third time pursuant to a mandatory prison policy. This search turned up nothing.
 
 
 5
 Both plaintiffs remained under constant guard from the time of the first strip search until the time they were escorted to the DS-2 unit and searched for a third time. On all three occasions each plaintiff was ordered to undress, run his fingers through his hair, show the back of his ears, lift his scrotum, turn around, show the bottoms of his feet, and bend over and expose his anus.
 
 II. ANALYSIS
 A. Reasonable Search
 
 6
 Plaintiffs argue that, because they were under constant guard, the second and third searches were unreasonable in violation of the fourth amendment. Defendants contend that Aronson strip searched the plaintiffs a second time because he did not know the specific items he was looking for when he conducted the first search. Plaintiffs dispute this contention, arguing that Aronson must have known to look for the molds or a key when he conducted the first search because of his status as a Sergeant. Plaintiff's mere speculation is insufficient to create a dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Even if, as the plaintiffs contend, Aronson failed to thoroughly search them the first time, the second search did not violate the fourth amendment.
 
 
 7
 In addressing the issue of body cavity searches on prison inmates, this court has followed the analysis set forth by the Supreme Court in Bell v. Wolfish, 441 U.S. 523, 559 (1979). See Campbell v. Miller, 787 F.2d 217, 228-29 (7th Cir.1986). While strip searches, as defined in the Wisconsin prison regulations are somewhat less intrusive, the same basic approach is appropriate. Under that approach, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.
 
 
 8
 The second search was reasonable even though plaintiffs were kept under constant guard after the first search. Aronson learned after the first search that a prison official discovered a key while searching one of the other inmates. Whether Aronson knew to search for a key the first time is not decisive. Here, prison officials determined that the grave threat posed by the circulation of a manufactured handcuff key necessitated a second search of the plaintiffs. Our reluctance to second guess the defendants' determination that the situation necessitated a second strip search conforms with the Supreme Court's directive that federal courts defer to "the judgment of experienced prison administrators, especially those involving internal prison security," as is the case here. Colon v. Schneider, 899 F.2d 660, 667 (7th Cir.1990).
 
 
 9
 Plaintiffs also argue that the search was unreasonable because it was conducted within the view of other inmates. There is some dispute as to whether other inmates could actually see the plaintiffs during the strip search. Although the location where the search took place is a factor in determining its reasonableness, even when viewing the record in the light most favorable to the plaintiffs, the searches were reasonable. Bell, 441 U.S. at 559. The defendants explained that the searches were conducted in the shower area, rather than in a private cell in order to limit the inmate's opportunity to discard the key and later retrieve it by providing him with less places to secret the key. Moreover, the fact that other inmates of the same sex might have witnessed the strip search does not outweigh the legitimate security reasons for conducting the search.
 
 
 10
 CCI's policy that all prisoners confined to the DS-2 unit for disciplinary reasons submit to a visual cavity search before entering the DS-2 unit is also reasonable under the fourth amendment.[1] Many courts, including this one, have previously upheld the validity of routine, non-random visual cavity searches of prisoners. See Campbell, 787 F.2d at 228 (routine visual cavity searches of inmates both before and after using the prison library was justified); Rickman v. Avaniti, 854 F.2d 327, 328 (9th Cir.1988) (visual cavity searches of administrative segregation prisoners every time they leave their cell held constitutional); Goff v. Nix, 803 F.2d 358, 364-65 (8th Cir.1986) (court held that prison policy subjecting prisoners to a visual cavity search before leaving maximum security unit was reasonable).
 
 
 11
 The scope of CCI's mandatory search policy is limited. The searches are conducted on convicted prisoners placed on DS-2 unit for disciplinary reasons. The DS-2 unit is a high-security unit housing inmates with disciplinary and violence problems. Officer Schneider explained in his affidavit that the searches are conducted to maintain prison safety by preventing inmates from smuggling contraband and weapons into the DS-2 unit. Maintaining prison security is a legitimate objective for the prison. See Bell, 441 U.S. at 557; Colon, 899 F.2d at 669. Inmate attempts to secret weapons or contraband on their person are well documented. Bell, 441 U.S. at 559; see also Goff, 803 F.2d at 363 (discussing inmate attempts to secret weapons on their person). Finally, these searches are no more intrusive then the searches upheld in Bell, 441 U.S. at 560, as they are visual, and do not involve touching.
 
 
 12
 The searches of the plaintiffs pursuant to CCI's policy were reasonable even though the plaintiffs remained under constant supervision after the first search. The policy is mandatory unless an inmate is placed on the DS-2 unit for non-disciplinary reasons, which was not the case here. Officer Schneider testified that the policy is mandatory to maximize its efficiency by eliminating officer discretion. Moreover, despite the plaintiffs' supervision, there is the possibility that a prison employee might give a prisoner a weapon to smuggle into the DS-2 unit. See Arruda v. Fair, 710 F.2d 886, 888 (1st. Cir.1983) (recognizing prison employee involvement in weapons smuggling).
 
 B. Privacy Rights
 
 13
 After initially allowing the plaintiffs to proceed in forma pauperis, the district court withdrew such leave as to the plaintiffs' privacy claims. Plaintiffs allege that the shower strip searches violated their right to privacy because other inmates observed their occurrence. Assuming that a prisoner's limited right to bodily privacy includes the right not to be strip searched in view of members of the same sex, plaintiffs' claim still fails. See Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir.1988) ("[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex, is impelled by elementary self-respect and dignity").
 
 
 14
 A prison regulation which impinges on a prisoner's constitutional rights is valid if it is reasonably related to a legitimate penological objective. Turner v. Safley, 482 U.S. 78, 89 (1987). As stated earlier, defendants conducted the search in the shower rather than a cell to minimize the number of places the key could be dumped and hidden from the searching officer. Even an unoccupied cell contains a toilet, a sink, and furniture where a prisoner could secret contraband or a weapon while the searching officer's eyes are averted. The defendants' decision to search the plaintiffs in the shower stall is reasonably related to legitimate prison security concerns. Thus, the district court correctly withdrew leave to proceed in forma pauperis on plaintiffs' privacy claim.
 
 C. Liberty Interest
 
 15
 Finally, plaintiffs assert that Wis.Admin.Code Sec. 306.16(b) creates a protectible liberty interest in being strip searched in a clean and private place and defendants violated that interest when they searched plaintiffs in an allegedly "wet and dirty" shower in view of other inmates. In support of their claim the plaintiffs argue that Section 306.16(b) contains mandatory language and limits the place where a strip search may be conducted. The relevant portion of Sec. 306.16(b) states that "A strip search may only be conducted in a clean and private place."
 
 
 16
 A state statute or regulation creates a constitutionally protected liberty interest "by establishing "substantive predicates" to govern official decision making" and "by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 462 (1989). Whether or not the state intended to create a liberty interest depends on the nature of the language used by the legislature or state agency. Colon, 889 F.2d at 667. While the use of "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed," Russ v. Young, 895 F.2d 1149, 1153 (7th Cir.1990) (citation omitted), is certainly relevant in determining whether a protected liberty interest is established by regulation, such language does not automatically create a claim of entitlement triggering the procedural protections of the due process clause. See Colon, 889 F.2d at 667. It is necessary to read such phraseology in the context of the overall administrative scheme in which it is placed. We have acknowledged previously that, when thus evaluated, prison regulations may be read as setting professional standards for prison personnel while evidencing no intent to establish a cognizable liberty interest in the inmate with respect to their strict observance. See Colon, 899 F.2d at 667. We believe that the regulation requiring strip searches to be conducted in a clean and private place can be read most reasonably as such a regulation.
 
 
 17
 Accordingly, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Initially, the district court denied defendants' motion for summary judgment regarding the third strip search because of a disputed fact regarding the mandatory nature of the prison policy. On defendants' motion for reconsideration, the court resolved such dispute finding that the policy was mandatory as to all prisoners placed on DS-2 for disciplinary reasons