Cheryl HARRISON, as Administrator of the Estate of Jennifer L. Harrison, Deceased, Cheryl Harrison, as Guardian for Ryan Harrison, a minor, and Cheryl Harrison, Individually, Plaintiffs–Appellants,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware corporation, Defendant–Appellee.

No. 91–1007.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1991.

Decided May 22, 1992.

Paul J. Bargiel, Chicago, Ill. (argued), Derek G. Edens, Cichocki & Armstrong, Oak Park, Ill., for plaintiff-appellant.

John Newell, Kenneth J. Wysoglad (argued), Michael L. Sazdanoff, Robert J. Prendergast, Wysoglad & Associates, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr.,* COFFEY, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Cheryl Harrison appeals the district court's entry of judgment on the jury verdict dismissing her claim for damages for the wrongful death of her daughter, Jennifer Harrison. We affirm.

## I. FACTS

Jennifer Harrison received fatal injuries on June 14, 1987, when the car in which she was riding was struck by a Burlington Northern Railroad train at a crossing on Harmony Road in Ogle County, Illinois. Harmony Road is a lightly-traveled gravel road that, according to a 1986 United States Department of Transportation report, has an estimated average traffic volume of 300 vehicles per day crossing the Burlington Railroad tracks. Because of the nature of the crossing (plank and asphalt crossing on a gravel road), traffic usually approaches the crossing slowly. At the time of the accident, a round, yellow railroad warning sign with an "X" and the letters "RR" on it was located 779 feet before the crossing, and a railroad "crossbuck" sign, consisting of cross arms on a post with the words "Railroad Crossing" on them warned drivers that they were about to cross the railroad. There were no automated warning signals.

As a result of the Harrison accident, the Illinois Commerce Commission inspected the Harmony Road crossing and apparently [1] determined that it was so dangerous that it required improvements such as automatic warning devices to render the crossing safe.[2] Harrison attempted to enter the Illinois Commerce Commission report as well as a letter from the Illinois Commerce Commission to the Railroad into evidence at trial, but the trial judge granted the Railroad's motion *in limine* to exclude the evidence. The court ruled that the evidence was inadmissible pursuant to 23 U.S.C. § 409, which requires the exclusion of "data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings" if improvements may be implemented with the use of federal funds.[3] The district judge likewise exclud-

---

* Judge Wood, Jr., assumed senior status on January 16, 1992, which was after oral argument in this case.

1. The plaintiff alleges that the gravamen of the Illinois Commerce Commission report was that "the crossing is so dangerous as to justify expenditure of State administered funds to install additional automatic warning devices." The report clearly noted some deficiencies in the crossing, but as portions of the report included in the record have been excised, it is impossible to ascertain whether or not the Commission found that automatic warning devices were warranted.

2. Prior to 1987, an accident in 1967, some twenty years prior, was the only other accident of this nature that occurred at the Harmony Road crossing since the state of Illinois began keeping records in about 1955. In 1983, a driver stopped at the Harmony Road crossing, apparently decided that the approaching train had stopped, and began to drive across the tracks, at which time the train struck the automobile. According to the railroad accident report, there was "$100.00 damage to the [train] and minimal amt. of damage to auto." The trial judge excluded evidence of this accident because it was so dissimilar.

3. The legislative history of § 409 is silent as to why Congress determined that such data should be inadmissible in judicial proceedings. *See* H.R.Conf.Rep. No. 100–27, 104th Cong., 1st Sess. (*reprinted in* 1987 U.S.Code Cong. & Admin.News 66, 122, 156–57). Courts that have considered the purpose of the section have reasoned from the language contained therein that its purpose was to "facilitate candor in administrative evaluations of highway safety hazards," *Robertson v. Union Pac. R.R.*, 954 F.2d 1433, 1435 (8th Cir.1992) (citation omitted), or "to keep the record-keeping required by Federal

ed testimony from the authors of the Illinois Commerce Commission letter and report concerning the dangerous crossing on the ground that the plaintiff could not bypass the provisions of § 409 through presenting testimony about them instead of submitting the documents themselves. Harrison made no offer of proof to establish that the anticipated witnesses' testimony would have been any different from the information included in the excluded report and letter.

One of the plaintiff's principal theories at trial was that the Railroad breached its statutory duty pursuant to Ill.Rev.Stat. ch. 95½, ¶ 18c–7402(2)(a)[4] to have its trains sound a whistle or horn continuously from a quarter of a mile away from all crossings until the train crosses the roadway. Harrison presented four witnesses who were near the railroad tracks and crossing at the time of the accident who testified that they did not hear the whistle blowing continuously; the Railroad presented five witnesses (three employees and two witnesses from a campground near the crossing) who testified that the whistle was blowing in a series of blasts[5] for the time period of approximately 20 seconds that it took the train to travel the last quarter of a mile prior to striking the car in which Jennifer Harrison was riding. In addition to the whistle, the three Railroad employees testified that the bell was ringing continuously for at least a quarter of a mile during the time the train was approaching the cross-

ing.[6] The plaintiff's attorney failed to ask any witness questions in regard to the bell. When Harrison submitted jury instructions regarding the Railroad's alleged breach of its statutory duty, the court rejected the instructions because "it is sufficient under the statute that either a whistle or a bell be sounded. The evidence was that the bell was being sounded all the way through." The plaintiff neither challenged the judge's assessment of the evidence nor argued to the jury in the closing statement that there was any evidence suggesting that the bell was not ringing continuously.

## II. ISSUES

Harrison raises two issues on her appeal of the district court's dismissal of her claim for damages for the wrongful death of her daughter: 1) whether the district court erred in refusing to give the plaintiff's requested instructions regarding the Railroad's breach of a statutory duty; and 2) whether the district court erred in excluding evidence of the Illinois Commerce Commission's post-accident evaluation of the extra-hazardous nature of the Harmony Road crossing.

## III. BREACH OF STATUTORY DUTY

In support of her theory that the Railroad breached a statutory duty when it allegedly failed to blow its whistle for one-quarter of a mile as it approached the crossing, the plaintiff requested the trial

---

funding provisions from providing an additional, virtually no-work tool for direct use in private litigation." *Light v. State of New York*, 149 Misc.2d 75, 560 N.Y.S.2d 962, 965 (Ct.Cl.1990).

**4.** "Every rail carrier shall cause a bell, and a whistle or horn to be placed and kept on each locomotive, and shall cause the same to be rung or sounded by the engineer or fireman, at the distance of at least 1,320 feet, from the place where the railroad crosses or intersects any public highway, and shall be kept ringing or sounding until the highway is reached...."

**5.** The engineer on the train who had 16 years of experience as an engineer for Burlington Northern testified as far as the question of the train whistle is concerned that he blew the whistle in the manner prescribed in a consolidated book of operating rules used by 30 to 35 other rail-

roads. The prescribed manner of blowing the whistle, beginning one-quarter of a mile before the crossing, is a long blast, a pause, a long blast, a pause, a short blast, a pause, and then a long blast that continues until the train is crossing the road. The three Railroad employees testified that the long blasts were about five seconds each, the short blast about two seconds, and the pauses about one second. The two non-employee witnesses for the Railroad testified that they heard two long blasts, a short blast and another long blast, for a total of 20 to 30 seconds before the crash. The plaintiff does not dispute that blowing the whistle in the prescribed manner meets the requirement of the statute.

**6.** The engineer testified that he activated the bell warning near the beginning of the trip, and it continued to ring throughout the journey.

judge to present the following instruction to the jury:

"There was in force in the State of Illinois at the time of the occurrence in question a statute which provided:

Every railroad corporation shall cause a bell and a whistle or horn to be placed and kept on each locomotive to be rung or sounded by the engineer or fireman at a distance of at least one quarter mile from the place where the railroad crosses or intersects any public highway and shall be kept ringing or sounding until the highway is reached.

"If you find that the Burlington Northern Railroad violated the statute on the occasion in question, then you may consider that fact together with all of the other facts and circumstances in evidence in determining whether or not the Burlington Northern Railroad was negligent immediately before and at the time of the occurrence."

Plaintiff's instruction 18. Harrison submitted an alternative instruction which was similar except for the last paragraph. It stated: "If you find that the Burlington Northern Railroad violated the statute on the occasion in question, then you must find that the Burlington Northern was negligent immediately before and at the time of the occurrence." Plaintiff's instruction 18–A. The trial court ruled as follows:

"I rejected … Plaintiffs' 18 and 18–A on the basis of case authority which indicated that despite the statutory language, that it is sufficient under the statute that either a whistle or a bell be sounded. The evidence was that the bell was being sounded all the way through."

The plaintiff's attorney failed to object to the trial court's refusal to give the proposed instructions; nor did he argue that the court erred in its determination that the bell was sounding all the way through the intersection. Fed.R.Civ.P. 51 states: *"No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."* Thus, the plaintiff's failure to object to the trial judge's rejection of her instructions at trial prevents her from arguing on appeal that the refusal to give the instructions was reversible error. Furthermore, Harrison's argument that there was evidence presented at trial that the bell was not sounded for the statutory distance is likewise raised for the first time on appeal. We require parties to raise timely, precise objections to the trial court rulings in order that the judge might have an opportunity to remedy inadvertent errors if there be any. We will not reverse a trial court's judgment on a ground that was not presented to it. "[T]his court has repeatedly stated that arguments raised for the first time on appeal are waived." *United States v. Harty,* 930 F.2d 1257, 1261 (7th Cir.1991) (quoting *Colon v. Schneider,* 899 F.2d 660 (7th Cir. 1990)). Since the plaintiff failed to raise a timely objection to the district court's rejection of her instructions, she has waived that objection on appeal.[7]

## IV. EXCLUSION UNDER 23 U.S.C. § 409

■ Harrison argues that the district court's exclusion of the evidence of the Illinois Commerce Commission's investigative report and recommendations regarding

---

**7.** Moreover, plaintiff's support for her argument that the bell was not ringing is based upon an argument from silence. A witness' silence about the ringing of the bell fails to contradict testimony that the bell was ringing. While a witness' failure to mention the ringing of a bell might be sufficient to support a court's decision to give the jury instruction the plaintiff requested, silence does not necessarily *require* the giving of such an instruction. The testimony of one witness that she *"didn't hear anything before that one blast"* in response to questioning about

*the whistle likewise fails to contradict the testimony that the bell was ringing.* To take the plaintiff's argument at face value that the witness meant "that she didn't hear *'anything'*—not a bell, not a horn, not a whistle, not *anything"* would mean that the witness, who was standing only about 150 feet from the railroad crossing, also failed to hear the approaching freight train that was traveling 60 m.p.h. If the witness was oblivious to the roar of the approaching freight train, she may well have been unconscious of the ringing of the bell as well.

the Harmony Road crossing deprived her of the right to introduce evidence proving her theory that her daughter's death was the result of Burlington's breach of its duty to provide automatic signals at the Harmony Road crossing. The trial court excluded the evidence on the basis of 23 U.S.C. § 409, which provides:

> "Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data."

The appellant does not dispute that the Illinois Commerce Commission documents constitute "data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of ... railway-highway crossings," but she denies that the Harmony Road crossing is eligible for the implementation of improvements utilizing federal highway funds.

In her reply brief, Harrison admits that "[i]f Burlington Northern is correct in its contention that the Harmony Road crossing is eligible for federal funds then its conclusion that the use of these materials is barred is correct." Harrison's contention is that the Harmony Road crossing does not fall within § 409 because Harmony Road is a non-federal aid highway system. It is undisputed that Harmony Road does not fall within the definition of a federal-aid system under 23 U.S.C. § 103(a). But the appellant fails to recognize that even though Harmony Road is not part of a federal-aid system, the Harmony Road crossing may nonetheless qualify for federal aid for the purposes of safety enhancement. Harmony Road is a "high-way" according to 23 U.S.C. § 101(a), which defines "highways" as including "roads, streets, and parkways...." Harmony Road likewise qualifies as a "public road": "the term 'public road' means any road or street under the jurisdiction of and maintained by a public authority and open to public travel." *Id.* 23 U.S.C. § 130, referenced in § 409, provides in pertinent part:

> "(a) [T]he entire cost of construction of projects for the elimination of hazards of railway-highway crossings ... may be paid from sums apportioned in accordance with section 104 of this title....

> .  .  .  .  .

> "(d) **Survey and schedule of projects.**— Each State shall conduct and systematically maintain a survey of *all highways* to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose. At a minimum, such a schedule shall provide signs for all railway-highway crossings.

> "(e) **Funds for protective devices.**—At least ½ of the funds authorized for and expended under this section shall be available for the installation of protective devices at railway-highway crossings."

(Emphasis added). Since Harmony Road qualifies as a "highway" under 23 U.S.C. § 101(a), it seems evident that safety improvements to the Harmony Road crossing would qualify for federal funding under 23 U.S.C. § 130. We note that § 409 withdraws the broad latitude of discretion ordinarily allowed judges in evidentiary matters and bars the reception of evidence as it states that the "reports, surveys, schedules, lists, or data" within the statute *"shall not be* admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data." (Emphasis added). Thus, we hold that the district judge properly excluded the letter and reports from the Illinois Commerce Commission, for the Harmony Road crossing is a "railway-highway crossing" within the

provisions of § 409;[8] we are not at liberty to ignore the congressional mandate.

■ The appellant additionally argues that the district court erred in excluding the testimony of the authors of the Illinois Commerce Commission letter and report. As the district court noted in excluding the witnesses' testimony, Section

"409 is, in effect, a congressional direction that if a project conceivably could be financed by federal funds as this one could have been, that in the interest of getting the job done, they don't want official reports being something that railroads have to be concerned about in personal injury cases, or that the investigator has to have that in mind when he is making a report.... If [the report is] not admissible, then having somebody get on the stand and testify to it, I don't think I can duck the statute that way."

"Other courts have recognized that the underlying intent of the statute is to 'facilitate candor in administrative evaluations of highway safety hazards,' and to prohibit federally required record-keeping from being used as a 'tool ... in private litigation.'" *Robertson v. Union Pac. R.R.*, 954 F.2d 1433, 1435 (8th Cir.1992) (citations omitted). We agree with the trial judge that allowing the witnesses to testify as to the content of the letter and report would have circumvented the purposes of the statute. Thus, the district court properly excluded the testimony of the Illinois Commerce Commission witnesses.[9]

## V. CONCLUSION

We hold that the appellant waived her argument that the district court erred in rejecting her jury instructions regarding a statutory violation because she failed to argue to the trial court that there was evidence tending to establish that the train was not ringing its bell as it traversed the one-quarter mile before the crossing. We further hold that the district court properly excluded evidence relating to the Illinois Commerce Commission's investigation of the Harmony Road crossing, since it is a "railway-highway crossing" within the provision of 23 U.S.C. § 409. The judgment of the district court is

AFFIRMED.

---

**8.** Harrison's argument that § 409 applies only to highways designated in 23 U.S.C. § 103 is without merit. § 409 refers to §§ 130, 144 and 152 but not to § 103.

**9.** At trial, the plaintiff failed to offer proof that she wished to present the testimony of the witnesses for purposes other than describing the results of the investigation. To the extent that she is arguing on appeal that the witnesses should have been allowed to testify in regard to their observations of the crossing that were not contained in the letter and report, the argument is waived. *See Harty*, 930 F.2d at 1261.