**Gary Martin SUNDBY, Plaintiff,**

v.

**Patrick J. FIEDLER, Donald Gudmanson, Carol Wetzel, Karl Brekke, Mike Ziemet, Dr. Margaret Alexander, Defendants.**

**No. 92–C–828–C.**

United States District Court,
W.D. Wisconsin.

July 19, 1993.

plaintiff possesses a limited liberty interest in refusing to participate in the treatment program, his interest is overcome by defendants' legitimate interest in promoting inmates' rehabilitation. Because summary judgment will be granted on that basis, I need not reach defendants' argument regarding qualified immunity.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Id.*, at 322, 106 S.Ct. at 2552.

From the parties' proposed findings of fact, and for the purpose only of deciding this motion, I find there is no genuine issue as to the following material facts.

Gary Martin Sundby, pro se.

John J. Glinski, Asst. Atty. Gen., Madison, WI, for Patrick J. Fiedler, Donald Gudmanson, Carol Wetzel, Karl Brekke, Mike Ziemet and Margaret Alexander.

## ORDER

CRABB, Chief Judge.

This is a civil action for injunctive and monetary relief brought pursuant to 42 U.S.C. § 1983. Plaintiff was granted leave to proceed *in forma pauperis* on his claims that defendants violated (1) his First Amendment rights by opening, reading and refusing to mail his privileged correspondence, and (2) the due process clause of the Fourteenth Amendment by transferring him to the sex offender unit without a hearing so that he could participate in a mandatory sex offender treatment program.[1]

The case is before the court on defendants' motion for summary judgment. Defendants contend that plaintiff does not have a liberty interest in refusing to participate in the treatment program and that they are entitled to qualified immunity for their decision to transfer plaintiff. I conclude that although

## UNDISPUTED FACTS

At all times relevant to this action, plaintiff Gary Martin Sundby was confined at the Oshkosh Correctional Institution. Defendant Patrick J. Fiedler was the Secretary of the

1. In an order dated May 4, 1993, plaintiff's motion for a voluntary dismissal of his mail claim was granted with prejudice. This opinion addresses the remaining Fourteenth Amendment claim.

State of Wisconsin Department of Corrections; defendant Donald Gudmanson was the superintendent at Oshkosh; defendant Karl Brekke was Southwest Center Director at Oshkosh; defendants Carol Wetzel and Michael Zeimet were social workers at Oshkosh; and defendant Dr. Margaret Alexander was Psychologist Supervisor I at Oshkosh.

In late summer or early fall 1992, Oshkosh received orders from the Department of Corrections that Oshkosh was to expand its population. Prior to this time, the only inmates housed in Southwest Cell Hall at Oshkosh were those inmates who were participating in the sexual offenders treatment program, known as SOTP. Clinical Services is the Department of Corrections agency responsible for providing mental health care and treatment services to inmates in the Wisconsin Prison System. Professional staff employed by Clinical Services determine the appropriateness of participation in Clinical Services programs. Defendant Alexander is in charge of the Sex Offenders Treatment Programs at Oshkosh, which are commonly called SOTP and SOTP II. Clinical Services staff at Oshkosh determine which inmates should be admitted to SOTP programs.

The SOTP program is a treatment program for sex offenders in the Wisconsin prison system. The SOTP program at Oshkosh is designed to be a two to three-year program. The SOTP II program is a new three-month pre-treatment program at Oshkosh for men who minimize or deny their offenses or are not sufficiently motivated to benefit from the SOTP program.[2]

In order for an inmate to participate in SOTP, he must meet certain criteria, including a clinical evaluation and an assessment of the inmate, the signing of a waiver of confidentiality and an expression of willingness to participate in the program. With the addition of 23 beds in the Southwest Cell Hall, the SOTP program was expanded to include education for sexual offenders. The three-month SOTP II program was designed to help a sexual offender come to grips with the reality of what has happened and accept

responsibility for his actions and to educate him and motivate him to accept treatment.

The only criteria for an inmate to participate in the SOTP II program are that the inmate is a sexual offender and denies that he needs treatment. An inmate who meets the two criteria for the SOTP II program cannot refuse to participate if he is assigned to the program. Clinical Services arrives at a determination whether an inmate should participate in either SOTP or SOTP II on the basis of their professional judgment, training, experience and knowledge of programs available to inmates in the correctional system. Defendant Alexander reviews an inmate's Clinical Services file only upon request. In defendant Alexander's opinion, SOTP II was an appropriate means of educating and motivating plaintiff to accept treatment within the prison system, considering plaintiff's sentence structure and the resources allocated to Clinical Services programs.

In August 1992, after the additional beds were put in the Southwest Cell Hall, defendant Brekke received the names of inmates who met the criteria for assignment to the SOTP II program from the Program Review Committee. The committee believed that plaintiff was an individual who met the criteria for placement in the SOTP II program. On August 14, 1992, plaintiff was given orders that he would be moving from the Open Center to the Southwest Center. Plaintiff was scheduled to participate in SOTP II.

When plaintiff was ordered to pack his belongings to move to the Southwest Center, he refused to do so. Plaintiff's move was intended to help facilitate his participation in SOTP II and was considered an assignment. An assignment cannot be refused. As a consequence of plaintiff's refusal to move, he was issued Conduct Report No. 492560 and placed in temporary lock-up.

On August 24, 1992, a hearing was held on the conduct report at which plaintiff admitted to not following orders and stated that he misunderstood the process. At this time, plaintiff agreed to move to the ordered unit. As punishment for his previous refusal to

2. This program has been renamed and is now called the Deniers Education Program or DEP.

move, he received five days' room confinement.

## OPINION

■ Plaintiff's contention is that defendants violated his Fourteenth Amendment due process rights when they placed him in a sex offender unit within the Oshkosh Correctional Institution in order to force him to participate in the SOTP II program. The due process clause protects certain fundamental rights, one of which is the right to be free from unjustified bodily and mental intrusions. *Washington v. Harper,* 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990) (prisoner possesses a significant liberty interest in avoiding unwanted administration of psychotropic drugs); *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (freedom from bodily restraint recognized as "core" of liberty interest protected by the due process clause); *Vitek v. Jones,* 445 U.S. 480, 492–93, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980) (involuntary transfer of inmate to mental institution where he would receive compelled behavior modification treatment implicates liberty interest); *White v. Napoleon,* 897 F.2d 103, 113 (3rd Cir.1990) (prisoners retain limited right to refuse treatment). However, an inmate's liberty interest in refusing treatment is not absolute, but is qualified by the legitimate penological objectives of the correction system such as punishment and rehabilitation as well as the prison's legitimate interest in maintaining safety and security. *Washington,* 494 U.S. at 223, 110 S.Ct. at 1037; *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

For instance, in *Washington v. Harper,* 494 U.S. at 223, 110 S.Ct. at 1037, the Supreme Court restated the principle set out in *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261, that the standard courts should use in reviewing prison policies that implicate constitutional rights is an inquiry whether the regulation or program is "reasonably related to legitimate penological interests." In upholding a state regulation that provided for the forced administration of psychotropic drugs, the Court focused on the significant penological interest in ensuring the safety of prison

staff and the safety of other prisoners as well as the medical needs of the mentally disabled and violent inmate. *Id.* 494 U.S. at 225, 110 S.Ct. at 1038. *See also United States v. Watson,* 893 F.2d 970, 980 (8th Cir.) ("Institutions such as federal prisons not only have a legitimate interest but also a duty to prevent injury to the mentally ill prisoner, other inmates, and staff") (citing *Youngberg v. Romeo,* 457 U.S. at 324, 102 S.Ct. at 2462), *vacated on other grounds,* 900 F.2d 1322 (8th Cir), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990).

■ Plaintiff's case differs from these cases in that the SOTP II policy is a treatment and education program that is carried out without using of physical restraints, injections or other bodily intrusions. Although this distinction lessens the gravity of the intrusion and with it, plaintiff's asserted interest, it does not extinguish plaintiff's liberty interest entirely. Plaintiff possesses a limited liberty interest in refusing to participate in the SOTP II program. However, under *Turner,* 482 U.S. 78, 107 S.Ct. 2254, plaintiff's interest can be overcome by defendants' showing that the SOTP II program serves a legitimate penological interest. Defendants have made that showing. The undisputed facts establish that the SOTP II program was designed to help sexual offenders accept their crime, educate them and motivate them to accept treatment. This rehabilitative purpose on the part of defendants is a legitimate penological interest sufficient to overcome plaintiff's limited liberty interest in refusing treatment. *See White,* 897 F.2d at 112–13; *see also Rutherford v. Hutto,* 377 F.Supp. 268 (E.D.Ark.1974) (prison may require inmates to participate in mandatory literacy programs for purpose of rehabilitation). On this basis, defendants' motion for summary judgment will be granted and I need not reach the issue whether defendants are entitled to qualified immunity.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED. The

Clerk of Court is directed to enter judgment accordingly and to close this case.