**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 30, 2011[*]
Decided April 29, 2011

*Before*

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-3288

| | |
|---|---|
| LEE KNOWLIN,<br>        *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 09-cv-531-wmc |
| MARK HEISE, et al.,<br>        *Defendants-Appellees*. | William M. Conley,<br>*Chief Judge*. |

### O R D E R

Lee Knowlin, a Wisconsin inmate, appeals the grant of summary judgment against him in his action under 42 U.S.C. § 1983, claiming that three prison officials denied him due process by compelling his participation in unnecessary substance-abuse treatment. We affirm.

Upon entering the Dodge Correctional Institution to serve a 20-year term for burglary, Knowlin was evaluated for security classification, including any need for drug

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

and alcohol treatment. A classification specialist with the Wisconsin Department of Corrections found insufficient evidence to classify Knowlin as substance-dependent, but the Department's classification division, headed by Mark Heise, scheduled Knowlin for treatment anyway, saying that he had not completed the Department's mandatory substance-abuse program during a previous incarceration for a drug offense. Knowlin insists that he received no notice that the treatment requirement had been reinstated. For six years he refused to participate in the program, but eventually yielded for reasons not clear from the record. He was then slotted to start treatment at a later date.

Knowlin's failure to complete treatment was one factor that led the prison's parole commission to deny him early release. He later sought transfer to a prison at which he could complete the program and was transferred to Flambeau Correctional Center, where he agreed to participate in treatment for fear of losing his eligibility for work release. Prisoners who are classified as needing treatment, he says, are barred from working for private-sector employers.

At Flambeau, Knowlin maintained that he did not need treatment for substance abuse. He appealed his classification (as needing treatment) to Gerald Konitzer, a section chief with the classification division, asking that he be transferred (again for unexplained reasons) to a different facility until his scheduled time for treatment or, alternatively, that he be excused from treatment entirely. And he repeatedly wrote Julianne Wurl-Koth, the Department of Corrections's director of program services, asking that substance-abuse treatment be terminated as a "need" for him because, he believed, it had been "arbitrarily assigned" by staff at Dodge when he began serving his sentence. These efforts, however, failed to result in any change to his classification.

Over the following year, Knowlin's classification continued to be a subject of dispute as he bounced around the Department of Corrections's prison network. He again appealed the classification to Konitzer and was transferred to another prison and terminated from the treatment program. But Konitzer refused to change Knowlin's classification, and Knowlin renewed his request to move to a prison where he could start treatment. He was then transferred to Jackson Correctional Center and scheduled for treatment; before he started, however, a Jackson prison official re-screened him for substance abuse and removed the as-needing-treatment classification, noting that there was "no documentation" showing that he had ever used or misused drugs or alcohol.

In the meantime, Knowlin sued Heise, Wurl-Koth, and Konitzer for damages and injunctive relief, asserting that they had denied him due process by requiring his participation in unnecessary substance-abuse treatment. He asserted that he had a right to refuse treatment and that exercising this right adversely affected his custody classification,

institution placement, and release date. He also moved to compel discovery, seeking among other things any documents regarding the program's "process and procedures," including the manual used at his re-screening at Jackson and the prison's guidelines used in determining custody classifications.

A magistrate judge denied the motion to compel. The judge noted that the request for documentation about the program was not reasonably calculated to lead to admissible evidence, that the custody-classification guidelines were already available in the prison library, and that there was no reason to doubt the veracity of the prison officials who denied being able to find the screening manual. The district judge then denied reconsideration of the magistrate judge's order.

The case was reassigned to another district judge, who later granted summary judgment for the prison officials. The judge acknowledged that Knowlin was "caught in a catch-22," willing to participate in the treatment program yet prevented from doing so due to mistakes made by prison staff. Notwithstanding these mistakes, the judge observed, the prison officials were entitled to qualified immunity from Knowlin's § 1983 claims because of uncertainty in the case law over a prisoner's right to refuse different kinds of medical treatment. Although the Supreme Court had made clear that prisoners possess a liberty interest in avoiding consequences qualitatively different from the typical conditions of confinement, *see, e.g.*, *Washington v. Harper*, 494 U.S. 210, 221-22 (1990); *Vitek v. Jones*, 445 U.S. 480, 494 (1980), district courts were conflicted over the rights of prisoners to refuse to participate in rehabilitative programs, *compare Sundby v. Fiedler*, 827 F. Supp. 580, 583 (W.D. Wis. 1993) (liberty interest in refusing rehabilitative program), *with Bollig v. Fiedler*, 863 F. Supp. 841, 848-49 (E.D. Wisc. 1994) (no liberty interest in refusing rehabilitative program). And even if the case law provided a clear rule, the judge added, Knowlin had not met his burden of showing that the substance-abuse treatment resembled other treatments that would deprive him of a liberty interest. Further, Knowlin failed to show that any of the defendant officials was personally involved in determining his need for treatment. Finally, Knowlin's request for injunctive relief was moot because the Jackson Correctional Institution had removed the treatment requirement as a "need" for him.

On appeal Knowlin argues that the district court erred in concluding that he presented insufficient evidence to show that he was deprived of a protected liberty interest. He asserts that the prison deprived him of a liberty interest by subjecting him to the "stigmatizing consequences" of being labeled "mentally ill from substance dependance" and penalizing him for refusing to complete the assigned treatment.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*,

526 U.S. 40, 59 (1999). A liberty interest may arise from the Due Process Clause itself, as in *Vitek*, 445 U.S. at 494, where the Court concluded that a prisoner has a liberty interest in avoiding the stigmatizing consequences of transfer to a mental hospital, coupled with mandatory behavior modification. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Whitford v. Boglino*, 63 F.3d 527, 531 n.5 (7th Cir. 1995). Or a liberty interest may arise from an expectation created by state laws or policies, in which the inquiry is whether the conditions facing a prisoner imposed a hardship atypical to the ordinary incidents of prison life. *See Wilkinson*, 545 U.S. at 221, 223; *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Knowlin failed to show that he faced consequences sufficient to deprive him of a liberty interest protected by the Constitution. By refusing treatment, Knowlin did face significant consequences, including a diminished chance of discretionary parole, work release, better custody classification, and transfer to institutions that he apparently regarded as better facilities. Such privileges, however, are not protected under the Constitution. *See Wilkinson*, 545 U.S. at 221; *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). And as for Knowlin's assertion that he faced stigma from being labeled substance-dependant, that label alone is insufficient to affect a liberty interest. *See Paul v. Davis*, 424 U.S. 693, 701 (1976); *Grennier v. Frank*, 453 F.3d 442, 444 (7th Cir. 2006); *Dean v. McWherter*, 70 F.3d 43, 45 (6th Cir. 1995); *cf. Renchenski v. Williams*, 622 F.3d 315, 325-331 (3d Cir. 2010) (collecting cases on whether stigma of sex-offender label affects a liberty interest and concluding that the label, coupled with compelled therapy, does affect such an interest).

Knowlin also failed to show that he had a state-created liberty interest. Although Wisconsin prisoners are entitled to presumptive parole after serving two-thirds of their sentences, *see* WIS. STAT. § 302.11(1), they enjoy no state-created liberty interest in early release before that time, as parole decisions are entirely discretionary, *see* WIS. STAT. § 304.06(1)(b); *Grennier*, 453 F.3d at 444. Thus Knowlin had no right to parole 8 years into his 20-year term. To the extent he asserts a state-created interest in work release, transfer, or better custody classification, the denial of these privileges does not create sufficient hardship to give rise to a liberty interest. *See Lekas v. Briley*, 405 F.3d 602, 610, 613 (7th Cir. 2005); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005). Because Knowlin failed to show that he has a liberty interest at stake, we need not reach the question whether the officials he sued were personally involved.

Knowlin lastly contends that he could have shown a violation of his constitutional rights if the magistrate judge hadn't denied his discovery request for information about the prison's treatment program as not reasonably calculated to lead to admissible evidence. We review decisions on discovery matters only for abuse of discretion, and Knowlin must show that the judge's decision caused him actual and substantial prejudice. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir. 2003); *Packman v. Chi.*

*Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001). But he cannot meet that burden because, no matter the treatment program's contents, he failed to show that the consequences he faced for refusing treatment deprived him of a protected liberty interest.

Although we conclude that Knowlin failed to show that he was deprived of a protected liberty interest, we are troubled that Knowlin was prevented from participating in treatment even when willing and that, despite his frequent protests, it took more than nine years for the prison to change his classification. We note the obligation of the state to address objectively serious medical needs of inmates, *see Roe v. Elyea*, 631 F.3d 843, 861-62 (7th Cir. 2011), and expect that prison authorities will be vigilant in meeting this obligation when monitoring an inmate's participation in substance-abuse programs.

AFFIRMED.